UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ANGELO NICOLO C., <br><br>  Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br>  Defendant. | Case No.:  20-cv-01402-KSC <br><br> **ORDER ON MOTIONS FOR SUMMARY JUDGMENT** <br><br> **[Doc. Nos. 18, 21]** |

On July 22, 2020, plaintiff Angelo Nicolo C. filed a complaint pursuant to 42 U.S.C. § 405(g) seeking judicial review of defendant's denial of his application for disability benefits. Doc. No. 1.  Before the Court are the parties' Cross-Motions for Summary Judgment.  Doc. Nos. 18, 21.  The Court has carefully considered the parties' arguments, the applicable law, and the evidence in the record, and, for the reasons stated below, **DENIES** Plaintiff's Motion for Summary Judgment and **GRANTS** defendant's Motion for Summary Judgment.

## I. BACKGROUND

### A. Plaintiff's Application for Disability Benefits

On November 28, 2017, plaintiff filed an application for disability insurance benefits under Title II of the Social Security Act and protectively filed a Title XVI application for

supplemental security income. Certified Administrative Record ("AR") at 18.[1]  In both applications plaintiff alleged disability beginning on January 2, 2007. *Id.* After his applications were denied at the initial stage and upon reconsideration, plaintiff requested and was given a hearing before an administrative law judge ("ALJ"). *Id*. The hearing was held on August 14, 2019. *Id.* Plaintiff appeared with counsel and gave testimony, and the ALJ also heard testimony from a vocational expert. *Id.*

**B. Summary of the ALJ's Findings**

The ALJ followed the five-step process described in the applicable regulations in rendering his decision.[2] *See generally* AR at 20-29. At step one, the ALJ found plaintiff did not engage in substantial gainful activity from the alleged date of the onset of plaintiff's disability through the date of the ALJ's decision. *Id.* at 20.

At step two, the ALJ found that plaintiff had the following severe impairments: morbid obesity, vertigo, hypertension, bundle branch block, cellulitis of lower extremity, dermatitis, hemorrhoids, lumbar degenerative disc disease, and obstructive sleep apnea. *Id.* at 21. The ALJ further found that these medically determinable impairments severely limited plaintiff's ability to perform basic work requirements. *Id.* At step three, the ALJ found that none of these impairments alone or in combination met or medically equaled

---

[1] The Court adopts the parties' pagination of the AR. All other record citations are to the Court's ECF page numbers.

[2] *See* 20 C.F.R. §§ 404.1520. First, the ALJ must determine whether the claimant is engaged in substantial gainful activity. *Id.*, § 404.1520(a)(4)(i). Second, the ALJ must determine whether the claimant is suffering from a "severe" impairment within the meaning of the Social Security regulations. *Id.*, § 404.1520(a)(4)(ii). Third, if the ALJ finds the claimant suffers from a severe impairment, the third step is to determine whether that impairment meets or is medically equal to one of the impairments identified in the regulations' Listing of Impairments. *Id.*, § 404.1520(a)(4)(iii). Fourth, if the severe impairment does not meet or equal a Listing, the ALJ must determine the claimant's residual functional capacity ("RFC") based on all impairments (including those that are not severe) and whether that RFC is sufficient for the claimant to perform his or her past relevant work. *Id.*, § 404.1520(a)(4)(iv). At the fifth and final step, the ALJ must determine whether the claimant can make an adjustment to other work based on his or her RFC. *Id.*, §404.1520(a)(4)(v). Throughout this process, "the ALJ 'is responsible for determining credibility, resolving conflicts in medical testimony, and for resolving ambiguities.'" *Ford v. Saul*, 950 F.3d 1141, 1149 (9th Cir. 2020) (citation omitted).

one of the impairments listed in the Commissioner's Listing of Impairments. *Id.* at 22-23.

At step four, the ALJ found that plaintiff had the RFC to perform "light work" with some exceptions based on his physical impairments, as follows:

> Able to lift, carry, push and pull 20 pounds occasionally and 10 pounds frequently; able to stand and/or walk 6 hours and sit 6 hours in an 8-hour workday with normal breaks; able to occasionally climb ramps and stairs, but unable to climb ropes, ladders or scaffolds; occasionally able to balance, stoop, kneel, crouch and crawl, and should avoid concentrated exposure to extreme cold, wetness, vibration, and hazards including unprotected heights and dangerous moving machinery.

*Id.* at 23.

Plaintiff claimed that due to his various medical conditions, he had to lie in bed with his legs elevated for six hours a day; could sit in a chair for no more than 35 minutes at a time; could stand for no more than five to ten minutes at a time; could lift up to ten pounds; required the use of assistive devices to ambulate, and experienced vertigo symptoms two to three times a week. *Id.* at 24; *see also id.* at 53-64, 69-74 (plaintiff's hearing testimony). In assessing plaintiff's RFC, the ALJ considered these symptoms and "the extent to which these symptoms can reasonably be accepted as consistent with the objective medical ... and other evidence." *Id.* at 23. This assessment required the ALJ to first determine whether there was an underlying medically determinable impairment that could be expected to cause plaintiff's symptoms, and second to evaluate the "intensity, persistence and limiting effects" of those symptoms on plaintiff's ability to do work-related activities by referring to the objective medical evidence. *Id.* at 24. Under this framework, the ALJ found that the medical evidence in the record supported a finding that plaintiff's medically determinable impairments could reasonably be expected to cause plaintiff's alleged symptoms but did not support the alleged intensity or persistence of those symptoms or limit his abilities to the extent plaintiff claimed. *Id.* The ALJ also found plaintiff could not return to his past relevant work as a gardener. *Id.* at 28.

At step five, the ALJ found that, considering plaintiff's age, education, work experience and RFC, he could perform jobs that existed in significant numbers in the

national economy. *Id.* at 29. In making this determination, the ALJ relied on the testimony of a vocational expert, who identified light-work and sedentary positions that could be performed by a person with plaintiff's specific physical limitations.[3] *Id.*; *see also id.* at 76-80 (vocational expert's hearing testimony). The ALJ then found that plaintiff was not disabled within the meaning of the Social Security regulations. *Id.* at 29-30. The Appeals Council denied review, and the ALJ's decision became final, on May 19, 2020. *Id.* at 1-3.

## II. DISPUTED ISSUES

Plaintiff moves for summary judgment on the basis that the ALJ's RFC determination is not supported by substantial evidence for two reasons. Doc. No. 18-1 at 14. First, plaintiff asserts that in determining that he had the ability to perform a reduced range of light work, the ALJ failed to properly evaluate the opinion evidence in the record by improperly discrediting Nurse Practitioner Nofuente's ("NP Nofuente") opinion as to plaintiff's limitations, holding plaintiff to a standard not supported by the regulations, and failing to consider reasons plaintiff did not obtain treatment. *Id.* at 15. Second, plaintiff asserts that the ALJ failed to properly evaluate his subjective complaints, mischaracterized the evidence, and provided a sparse summary of subjective findings. *Id.* at 21. Plaintiff requests that the Court reverse and remand for further proceedings, including a *de novo* hearing and decision by a different ALJ. *Id.* at 25.

The Commissioner also moves for summary judgment. Doc. No. 21. Responding to plaintiff's arguments, the Commissioner argues that because plaintiff applied for disability benefits after March 27, 2017, the ALJ applied a "new set of regulations for evaluating medical evidence" that "eliminate" the "hierarchy" of the previous regulations, and under which NP Nofuente's opinion was not entitled to any special deference. *Id.* at 6-7, 10-15. The Commissioner also asserts that the ALJ did not err in considering plaintiff's

---

[3] These included light work as a shipping receiving weigher (DOT 222.387-074), counter clerk photo finisher (DOT 249.366-010), or garment sorter (DOT 222.687-014) and sedentary work as a document preparer (DOT 249.587-018), ticket checker (DOT 219.587-010) or order clerk food and beverage (DOT 209.567-014).

subjective testimony, but "reasonably concluded that the record did not adequately support [p]laintiff's allegations of disabling symptoms and limitations." *Id.* at 23.

### III. STANDARD OF REVIEW

The Commissioner's final decision "must be affirmed" if it is "supported by substantial evidence, and if the Commissioner applied the correct legal standards." *Batson v. Comm'r Soc. Sec. Admin.*, 359 F.3d 1190, 1193 (9th Cir. 2004). "Substantial evidence" means "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Ford*, 950 F.3d at 1154 (citation omitted). This Court must review the record as a whole and consider adverse as well as supporting evidence. *See Ahearn v. Saul*, 988 F.3d 1111, 1115 (9th Cir. 2021). Where the evidence is susceptible of more than one rational interpretation, the Commissioner's decision must be upheld. *Id.* However, the Court cannot uphold the Commissioner's decision for reasons "'the agency did not invoke in making its decision.'" *Stout v. Comm'r Soc. Sec. Admin.*, 454 F.3d 1050, 1054 (9th Cir. 2006) (citation omitted). Even if the ALJ errs, the Court may affirm the decision if the error is harmless. *Ford*, 950 F.3d at 1154.

### IV. DISCUSSION

**A. The ALJ Did Not Err in Considering the Opinion Evidence in the Record**

Plaintiff asserts that the ALJ's assessment of plaintiff's RFC is not supported by substantial evidence because the ALJ "failed to properly evaluate" NP Nofuente's "opinion evidence." Doc. No. 18-1 at 14, 15. The opinion evidence at issue is a fill-in-the-blank and check-the-box questionnaire titled "Physical Impairment Questionnaire," completed and signed by NP Nofuente on November 3, 2017. AR at 296-97. Therein, NP Nofuente indicates that plaintiff suffers from lumbar degenerative disc disease, lumbar radiculopathy, and vertigo, which caused pain, numbness, dizziness, and difficulty walking. *Id.* NP Nofuente indicated on the questionnaire that plaintiff could sit for 60 minutes at a time and for a maximum of one hour per day; could stand or walk for 5 minutes at a time and for a maximum of zero hours per day, and that he would require a one-hour break once per hour during the workday; she also checked spaces on the form indicating

that plaintiff could lift less than 10 pounds frequently, and could lift 10 pounds occasionally, but could never lift anything heavier. *Id.* NP Nofuente further indicated that plaintiff could not engage in any tasks requiring fine finger manipulation, and that his ability to reach was limited, but that he had no limitations on tasks requiring him to grasp, turn, or twist objects. *Id.* In response to the question, "Is your patient physically capable of working an 8-hour day, 5 days a week employment on a sustained basis?" NP Nofuente checked the box "No." *Id.* There are no objective findings, test results or treatment notes reported in or attached to the questionnaire.

Consistent with the applicable regulations, the ALJ did not assign "any specific evidentiary weight, including controlling weight," to any medical opinions or findings, including NP Nofuente's disability questionnaire. AR at 26. After reviewing the entirety of the medical record, the ALJ found NP Nofuente's opinion regarding plaintiff's limitations was not persuasive. *Id.* at 28. Specifically, the ALJ noted that:

> [NP Nofuente's opinion] is neither substantially supported by [NP] Nofuente nor consistent with the longitudinal record. This opinion is provided in check box form, which contains little to no explanation for the limitations assigned. Similarly, there are no objective findings attached to the opinion that would support such extreme restrictions. In addition, these extreme limitation[s] are not consistent with the longitudinal findings, which … are not reflective of substantial deficits. This includes a lack of consistent gait deficits, significant motor strength abnormalities, high level of objective fatigue, substantial range of motion deficits, and cardiovascular abnormalities of note. [citations] Likewise, such an opinion is generally not in line with the lack of significantly invasive treatments in the record, which one would expect if [plaintiff] were limited to the extreme levels of limitation alleged.

*Id.*

Plaintiff argues that the ALJ "analyze[d] [this] evidence in a bubble isolated from the remainder of the record," and improperly discounted NP Nofuente's opinion "without considering" the evidence that supported it. Doc. No. 18-1 at 18. Plaintiff also takes issue with the ALJ's statement that the medical record did not reveal "significant" or "substantial" deficits, claiming that the ALJ thereby required plaintiff to demonstrate

"listing level findings for a non-listing level determination." *Id.* at 17. Plaintiff further asserts that the ALJ erred by allegedly failing to consider whether plaintiff's obesity "limited his ability to obtain treatment." *Id.* at 19.

The Court disagrees. Consistent with the applicable regulations, the ALJ assessed NP Nofuente's disability opinion in the context of the entire record and found that it lacked both "supportability" and "consistency" for the reasons detailed in his opinion. *See* 20 C.F.R. § 404.1520c(b)(2) (identifying "supportability … and consistency" as "the most important factors" the administration considers in determining "how persuasive … a medical source's medical opinions" are).

Regarding supportability, the ALJ did not, as plaintiff asserts, "reject[] NP Nofuente's opinion purely on the basis of the form it took." Doc. No. 22 at 5; *see also* Doc. No. 18-1 at 15-16 (asserting that the ALJ "dismiss[ed]" NP Nofuente's opinion "on the basis of the form it was submitted"). Instead, the ALJ observed – and plaintiff does not dispute – that beyond checking boxes and filling in blanks, NP Nofuente did not provide information, findings, or explanations for the limitations she assigned plaintiff, either by providing further detail on the form itself or attaching records to it. AR at 28; *see also id.* at 296. "'[T]he ALJ may permissibly reject check-off reports that do not contain any explanation of the bases of their conclusions,'" which is exactly what the ALJ did in this case. *Ford*, 950 F.3d at 1155 (citation omitted); *see also id.* at 1154 (noting that the ALJ is not required to accept an "opinion [that] is brief, conclusory and inadequately supported by clinical findings").

The ALJ then examined the medical evidence to determine whether it supported the "extreme" limitations NP Nofuente placed on plaintiff's ability to sit, stand, walk, lift, and handle objects. AR at 28. This was not, as plaintiff states, a "heightened level of review" (Doc. No. 22 at 4), but the review for "consistency" required by the regulations. *See* 20 C.F.R. § 404.1520c(b)(2). And, contrary to plaintiff's argument, the ALJ did not find that the medical record "show[ed] only … benign or insignificant findings." Doc. No. 18-1 at 17. Rather, the ALJ found that the objective findings and diagnoses supported some degree

of limitation, which were reflected in his RFC determination. AR at 28. Nevertheless, NP Nofuente's extreme limitations on plaintiff's ability to stand, sit, walk, and reach conflicted with other medical opinions and was inconsistent with the medical record as a whole. *Id.* The ALJ specifically referenced the opinion evidence of William Curran, M.D., as conflicting with NP Nofuente's, and noted that Dr. Curran's report was "supported by his findings following examination" which were "not indicative of an individual who is severely limited." *Id.* at 27. The contradiction between NP Nofuente's opinion and other opinions and findings in the record, as identified by the ALJ, are "specific and legitimate reasons" for discounting NP Nofuente's opinion regarding plaintiff's work-related limitations. *Ford*, 950 F.3d at 1154 (citation omitted); *see also* AR at 26-28 (describing conflicting medical opinions). And, as explained in more detail below, the ALJ's determination in this regard was amply supported by the record. The Court therefore rejects plaintiff's claim that the ALJ merely "select[ed] choice portions of the record" to support his RFC determination. Doc. No. 18-1 at 17.

In reviewing the medical evidence for consistency with NP Nofuente's opinion, the ALJ cited as one area of inconsistency the lack of "invasive" treatments for plaintiff's degenerative disc disease, hypertension, vertigo, cellulitis, or hemorrhoids, such as might be expected for a claimant whose abilities were restricted to the extent described by NP Nofuente. AR at 24-26. The Court disagrees with plaintiff's statement that in referencing the lack of "noteworthy" treatments, *id.*, the ALJ failed to consider whether plaintiff's obesity "limited his ability to obtain treatment." Doc. No. 18-1 at 19. In fact, the ALJ's finding that NP Nofuente's disability assessment was "generally not in line" with the objective medical evidence incorporated by reference the lengthy review of the record set forth in the opinion, which included an explicit discussion of plaintiff's obesity and its effect on his ability to work and repeated observations that plaintiff's care providers had not recommended "aggressive" treatments for his conditions. *See* AR at 24-28.

Plaintiff cites a singular notation that plaintiff was ineligible for an unspecified surgical procedure to support his allegation that he "had been referred for surgical

interventions and additional imaging, [but] his obesity and other impairments prevented him from actually obtaining more invasive treatment" (Doc. No. 18-1 at 19), ignoring the numerous referrals for weight loss surgery and a determination that plaintiff was a candidate for the same.  AR at 565, 570, 607, 629, 634-37.  Supporting the ALJ's determination that treatments recommended by plaintiff's care providers were not "aggressive," *id.* at 24, plaintiff's medical records are replete with admonitions to improve his diet and increase his activity, and treatment of his various conditions with physical therapy, medications, compression stockings and steroid injections.  *See*, *e.g.*, *id.* at 336, 347, 351-52, 427, 430, 468, 490, 558, 584, 612, 643.  Plaintiff's assertion that his weight "prevented" diagnostic imaging (Doc. No. 18-1 at 19) is likewise belied by the several results of imaging studies in the record, as well as the notation that an open-air MRI was offered as an available alternative if plaintiff could not be imaged in a closed MRI machine.  *See id.* at 294, 295, 335, 337, 506, 545, 663, 667.  The Court finds that the ALJ could reasonably find, based on the evidence cited, that plaintiff's course of treatment was inconsistent with treatment plans that "one would expect … for an individual limited in the extreme fashion [plaintiff] alleges."  AR at 24-25; *see Mayes v. Massanari*, 276 F.3d 453, 459 (9th Cir. 2001) ("When the evidence can rationally be interpreted in more than one way, the [C]ourt must uphold the Commissioner's decision.").

For the foregoing reasons, the Court finds the ALJ did not err in his consideration of the opinion evidence in the record.

**B. The ALJ Did Not Err in Considering Plaintiff's Subjective Evidence**

The Ninth Circuit requires a two-step process "to determine whether to credit a claimant's testimony regarding pain or symptoms."  *Ahearn*, 988 F.3d at 1116.  First, the ALJ must "determine[] whether the claimant has presented objective medical evidence of an underlying impairment that could reasonably be expected to produce the pain or symptoms alleged."  *Id.*  If the claimant has done so, "and there is no evidence of malingering," the ALJ may reject the claimant's subjective testimony about the severity of

///

his or her symptoms "only by offering specific, clear and convincing reasons for doing so." *Id.* (citations omitted).

Plaintiff testified at the hearing that his lower back "goes numb" when he stands or walks for more than a few minutes, and that his right leg "swells" such that he must keep it elevated above his heart for most of the day. AR at 53. He also complained of having vertigo two or three times a week, for which he took medication that made him "groggy." *Id.* Plaintiff told the ALJ that he could not work because "most of the time … I have to lay in bed most of the day because of my back and leg." *Id.* On questioning by his attorney, plaintiff stated that he is in bed with his legs elevated for approximately six hours per day. *Id.* at 70. He further testified that on a "good day," he can sit comfortably for about 35 minutes before needing to lie down for two to three hours. *Id.* at 72. As to standing in one place or walking, plaintiff testified he can do these activities for no more than five to ten minutes, after which he needs to rest for at least 15 minutes. *Id.* at 72-73.

Following the two-step process described above, the ALJ found that plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms," but that plaintiff's subjective report of the intensity, persistence and limiting effects of these impairments "was not entirely consistent with the medical … and other evidence in the record." *Id.* at 24. As noted, throughout his written decision, the ALJ described the medical evidence in detail regarding plaintiff's impairments of lumbar degenerative disc disease, hypertension, bundle branch block, obstructive sleep apnea, obesity, vertigo, cellulitis, and hemorrhoids. *Id.* at 24-26. Having conducted a thorough review of the record, the ALJ found that the objective findings regarding plaintiff's ailments were "inconsistent," and that neither the medical findings nor the recommended treatments supported the allegation that plaintiff's ability to work was limited "to the extreme extent alleged." *See id.* at 25; *see also generally id.* at 24-26 (making similar findings with respect to each of plaintiff's impairments).

Plaintiff asserts that the ALJ's analysis was not "legally sufficient." Doc. No. 18-1 at 23. He states that although the ALJ stated he had considered plaintiff's testimony, "his

analysis of [p]laintiff's subjective complaints relied on mischaracterization of the record, [and] his own interpretation of what treatment [p]laintiff should have undergone, in reliance on inconsequential objective findings that have no bearing on whether [p]laintiff needed to elevate his legs." Doc. No. 18-1 at 23. The Court finds plaintiff's arguments unpersuasive.

For example, plaintiff objects to the ALJ's remark that plaintiff's edema was "not consistent throughout the record," noting that plaintiff was observed to have edema in both legs on several occasions and had been instructed to wear compression socks and elevate his legs. Doc. No. 18-1 at 24. But the ALJ did not, as plaintiff states, "discount" plaintiff's allegation that he "need[ed] to elevate his legs above his heart." *Id.* at 23. Instead, he questioned the extent to which such need would prevent plaintiff from working. *See* AR at 22 (finding that "while there are some signs of edema … these are not so significant as to support a need to elevate the legs *to a level that would interfere with work*") (emphasis added). Specifically, the ALJ considered whether plaintiff's edema – or any other ailments – necessitated six hours of bed rest a day and the other alleged significant limitations on plaintiff's ability to sit, stand and walk.[4] After reviewing the medical record, the ALJ found that although plaintiff's impairments limited him to some extent, the limitations that

---

[4] In his reply, plaintiff states that he never alleged that "his physicians recommended he elevate his legs … for six hours out of an eight-hour workday," and that pointing out the lack of such recommendation in the medical records misses the "nuances" of his argument. Doc. No. 22 at 9. The Court notes, however, that plaintiff's own testimony was that he could not work because he needed to elevate his legs for "most of the day":

> Q: [T]ell me why it is that you are unable to work.
>
> A: I got my lower back goes numb on me. If I stand up or walk for like five to ten minutes it just goes numb. My leg, my right leg, I had cellulitis back in 2017 and it swells on me *so I have to elevate it above my heart most of the day*…. So, most of the time it's *I have to lay in bed most of the day because of my back and my leg*.

AR at 53 (emphasis added). The Court therefore finds it was appropriate for the ALJ to consider not only whether plaintiff's physicians had recommended that he elevate his feet at rest, but whether the record supported plaintiff's testimony regarding the length of time he needed to be "at rest" each day, to correctly determine plaintiff's RFC.

plaintiff testified were necessary were not supported by the objective record. AR at 22, 24-26. In other words, the ALJ considered plaintiff's subjective testimony, but "rejected [his] conclusion that his [condition] rendered [him] unable to engage in substantial gainful employment of any kind." *Magallanes v. Bowen*, 881 F.2d 747, 755 (9th Cir. 1989) (finding no error in ALJ's discrediting of subjective testimony). The ALJ "provide[d] 'specific, cogent reasons'" for doing so. *Ahearn,* 988 F.3d at 1116 (further noting that the ALJ "is not required to 'believe every allegation of disabling pain'") (citation omitted).

As before, plaintiff also complains that in discounting plaintiff's subjective testimony, the ALJ once again "rel[ied] on his own opinion" and "failed to acknowledge" that plaintiff's obesity prevented him from obtaining more aggressive treatment for his ailments. Doc. No. 18-1 at 20. For the reasons stated above, the Court disagrees.

For the foregoing reasons, the Court finds no error in the ALJ's consideration of plaintiff's subjective evidence.

### C. The ALJ's Decision Is Supported by Substantial Evidence

The Court has independently reviewed the record and, based on that review as summarized below, further finds that the ALJ's decision is supported by substantial evidence.

The record contains a Bariatric Surgery Consultation note dated October 15, 2015, from Charles D. Callery, M.D. *See* AR at 634-37. After examination and consultation, Dr. Callery determined that plaintiff (who at the time weighed 438 pounds) was a candidate for bariatric surgery. *Id.* at 636-37. Plaintiff had already attended one education lecture and was to attend another lecture and a support group meeting, as well as obtaining additional lab tests and imaging, before proceeding with the surgery. *Id.*

The record also contains progress notes from multiple visits between 2016 and 2018 with Majid Shabaz, M.D., and others in Dr. Shabaz's office, including NP Nofuente. *See id.* at 296-98; 346-54; 490-92; 607-33. These notes reflect consistent findings of morbid obesity, lower extremity edema, bundle branch block, lumbar degenerative disc disease and vertigo. *See, e.g., id.* at 346, 354, 491, 607, 612, 616. Plaintiff was advised to elevate

his leg while at rest. *See, e.g., id.* at 607, 612, 616, 621. The progress notes also reflect plaintiff was counseled regarding his weight and was repeatedly encouraged to improve his diet and increase his daily exercise, as his weight was seen as a "major contributor" to his medical problems. *See, e.g., id.* at 491, 607-08, 612, 616, 625, 629. Plaintiff was also given referrals to a bariatric surgeon, and the record reflects that plaintiff was scheduled to undergo bariatric surgery in March 2016 and then in November 2016. *Id.* at 626, 629. He told Dr. Shabaz that he was "unable to do the surgery" in March 2016. *Id.* at 626. Plaintiff was thereafter given additional referrals to the surgeon but reported variously that he wished to try a new diet before proceeding with surgical options and that the pre-surgical process was inconvenient and time-consuming. *Id.* at 491, 611, 621.

Plaintiff was seen by Richard Ostrup, M.D., on March 6, 2017, for evaluation of his lower back and leg pain. *Id.* 462-68. After examination and review of a recent lumbar MRI, Dr. Ostrup determined that plaintiff's pain was due to a herniated disc, and possibly "weight-related." *Id.* at 465, 468. He recommended epidural injections. *Id.* Although Dr. Ostrup planned to "follow and monitor" plaintiff, there are no further records from this provider. *Id.*

On March 29, 2017, plaintiff was hospitalized with severe edema and sepsis secondary to his right-leg cellulitis, for which he was given intravenous antibiotics and discharged after four days in stable condition. *Id.* at 277-95; 426-49. Dr. Shabaz referred plaintiff to the emergency department in January 2018 to rule out deep vein thrombosis as the cause of his complained-of leg and knee pain. *Id.* at 537. After examination and an ultrasound that revealed no evidence of a blood clot, the examining physician declined to admit plaintiff to the hospital and discharged him in stable condition with instructions to follow up with Dr. Shabaz, to drink plenty of water, and to elevate his foot while at rest. *Id.* at 538-40. There are no further records of hospitalizations or emergency room visits, although one provider referenced plaintiff's hospitalization for three days in 2013 for "debilitating vertigo." *Id.* at 634.

///

Of particular interest to the Court are the notes from plaintiff's visit with Dr. Shabaz on November 3, 2017, the same date that NP Nofuente filled out the Physical Impairment Questionnaire. *Id.* at 346-54.[5] Plaintiff presented to Dr. Shabaz's office on that date for "routine follow up as well as to request disability forms."[6] *Id.* at 346. Under "History of Present Illness," plaintiff was noted to have an "extensive medical history" and was complaining on that date of swelling in his right leg. *Id.* The notes continue: "Patient says he has not [been] able to work for many months due to his medical conditions. … Patient says he is unable to work due to vertigo and severe back pain. Patient reports that he is unable to stand or walk for long periods of time, and often has to lay down for approximately one hour at a time." *Id.* at 346; 352-53. On physical examination, plaintiff was noted to be morbidly obese and to have redness and swelling of his right leg. *Id.* at 354. Plaintiff was assessed with morbid obesity, vertigo, lumbar degenerative disc disease, cellulitis, and hypertension. *Id.* at 351. He was prescribed medications, encouraged to lose weight, "educated" about diet and exercise, and instructed to return for follow up in 3 to 6 months. *Id.* at 351-52. He was also advised to increase his activity level to at least 30 minutes of aerobic exercise daily. *Id.* at 351. It does not appear that any tests or evaluations were done to confirm plaintiff's self-reported work limitations.

On March 15, 2018, plaintiff presented to William Curran, M.D., for an orthopedic consultation. *Id.* at 546. He reported at that time that he was not under medical care for his low back and right leg complaints. *Id.* at 547. Upon physical examination, Dr. Curran found no evidence of swelling, effusion, erythema, or warmth in plaintiff's upper or lower extremities. *Id.* at 548. There was no range-of-motion limitation detected in plaintiff's cervical spine, but examination of the thoracolumbar spine revealed diffuse tenderness and moderate limitation of motion. *Id.* at 548-49. Plaintiff reported right leg pain during the

---

[5] There is an identical copy of this progress note at AR 616-620.

[6] Although NP Nofuente signed the disability forms, the progress note of this date is signed by Dr. Shabaz. AR at 354.

straight-leg raising exercises. *Id.* at 549.  Noting that plaintiff's obesity and low back pain would limit his activities, Dr. Curran provided a thorough assessment of plaintiff's limitations, including, *inter alia*, that plaintiff could stand, walk or sit for up to six hours during an eight-hour workday; could lift and carry 20 pounds occasionally and 10 pounds frequently; could not climb ladders but could occasionally stoop, kneel or crouch; could reach and manipulate objects without limitation; and had no visual, communicative, or environmental limitations. *Id.* at 550-51.  Dr. Curran noted that plaintiff was "in apparent comfort" for the duration of the examination and "[did] not appear to be in acute or chronic distress." *Id.* at 548.

Plaintiff also received care from Rami Michael, M.D. from May 2018 to July 2019. *See, e.g., id.* at 561-89, 674-80.  Progress notes from these visits reflect consistent complaints of pain in his back and lower extremities. *See, e.g., id.* at 561, 567, 571, 575. Dr. Michael assessed plaintiff with, *inter alia*, hypertension, sciatica, chronic pain, type II diabetes, gout, obstructive sleep apnea and morbid obesity. *Id.* at 565, 570, 574, 577, 579. Physical examinations sometimes revealed swelling in the legs or feet, but this finding was not consistent across visits. *See, e.g., id.* at 564, 569, 573, 577, 583, 677.  Dr. Michael advised plaintiff on multiple occasions to lose weight and encouraged him to exercise daily. *Id.* at 565, 579, 584.  Plaintiff was also given referrals to a pain specialist and to a bariatric surgeon. *Id.* at 565.  He refused a referral to physical therapy. *Id.*

On August 22, 2018, Sherry C. Kinnaird, M.D., examined plaintiff after he was "referred to [her] pain clinic" by his primary care provider. *Id.* at 555.  At that time, plaintiff was complaining of "severe" neck and back pain and reported that steroid injections were ineffective at relieving this pain but that he had some relief from physical therapy, heat, and the use of a TENS unit. *Id.*  On examination, Dr. Kinnaird noted that plaintiff's range of motion in his back was "decreased secondary to [his] pain," and that his range of motion in his legs was limited due to his obesity. *Id.* at 557.  Plaintiff's neurological assessment was normal, and he was noted to have a "normal gait" and was "able to stand without difficulty." *Id.*  Dr. Kinnaird advised plaintiff to avoid long periods

of bed rest and to "maintain or resume normal activity to the best of [his] ability," as "remaining active" would lead to "more rapid recovery with less chronic disability and fewer recurrent problems" as compared to bed rest. *Id.* at 558. She prescribed a course of physical therapy and ordered a medical-grade TENS unit for plaintiff's use. *Id.*

Based on the foregoing review of the objective medical evidence, the Court finds that the ALJ's determination that NP Nofuente's disability opinion was not consistent with the medical record is supported by substantial evidence. The Court further finds the ALJ's determination that the objective medical evidence did not support plaintiff's subjective testimony regarding the limiting effects of his impairments is also supported by substantial evidence. Accordingly, the ALJ's decision that plaintiff is not disabled will not be disturbed. *See Ahearn*, 988 F.3d at 1115 ("If substantial evidence in the record supports the ALJ's decision we must defer to the ALJ.").

## V. CONCLUSION

The Court finds the ALJ applied the correct legal standards and that his decision that plaintiff is not disabled is supported by substantial evidence. Accordingly, **IT IS HEREBY ORDERED** that defendant's Motion for Summary Judgment is **GRANTED** and plaintiff's Motion for Summary Judgment is **DENIED**. The final decision of the Commissioner of Social Security is affirmed. The Clerk of the Court shall enter judgment accordingly and terminate the case.

**IT IS SO ORDERED**.

Dated: October 27, 2021

Hon. Karen S. Crawford
United States Magistrate Judge